FREDERICKA HOMBERG WICKER, Judge.
 

 12Defendant/AppelIant, Jomo Carter, appeals his convictions and sentences. In the counseled assignments of error, Mr. Carter argues that the trial court erred in denying the motion to suppress, and in charging the jury that a less than unanimous verdict was sufficient to convict him. In the
 
 pro se
 
 assignments, he asserts that prosecutorial misconduct on the part of the District Attorney’s office impaired his right to a fair trial. For the reasons that follow, we affirm and remand with instructions.
 

 Mr. Carter was originally charged by a four-count bill of information charging him with three drug-related offenses and one count of being a felon in possession of a firearm, all offenses allegedly occurring on April 1, 2009. Specifically, the counts charged as follows: Count 1, possession with intent to distribute marijuana, in violation of La.R.S. 40:966(A); Count 2, possession with intent to distribute MDMA, in violation of La.R.S. 40:966(A); Count 3, possession with intent to distribute cocaine, in violation of La.R.S. 40:967(A); and, Count 4, felon in possession of a firearm, in violation of La.R.S. 14:95.1. Before trial, the Instate entered a
 
 nolle prosequi
 
 as to Count 2, possession with intent to distribute MDMA.
 

 Also before trial, the trial judge denied Mr. Carter’s motion to suppress evidence seized as a result of a search warrant. Later, a 12-person jury found Mr. Carter guilty as charged on the remaining three counts, Counts 1, 3, and 4. No jury polling was requested. The trial judge, however, elicited from the jury that the verdict was unanimous on all but one undisclosed count, which was an 11 to one verdict. On April 29, 2010 the trial judge denied Mr. Carter’s motion for a new trial and imposed sentencing. Mr. Carter, who had waived all applicable delays, was sentenced that day. The trial judge imposed 25-year concurrent hard labor sentences on Counts 1 (possession with intent to distribute marijuana) and 3 (possession with intent to distribute cocaine), while ordering that the sentence on Count 4 (felon in possession of a firearm), 15 years at hard labor, run consecutive with the other two sentences and any other sentence that Mr. Carter might be serving. In addition, the trial
 
 *3
 
 judge imposed the statutory restrictions on the firearm and cocaine convictions; namely, the first two years of the cocaine sentence being without benefit of parole, probation, or suspension of sentence and the entire firearms sentence having these statutory restrictions. Mr. Carter timely appealed his convictions and sentences.
 

 After a timely appeal was granted and after sentencing, the state noticed its intent to file a habitual offender bill of information. Subsequently, the state filed a habitual offender bill of information alleging that Mr. Carter was a third felony offender. The state sought to enhance the sentence on Count 3, possession with intent to distribute cocaine. Although the habitual offender proceedings of June 14, 2010 are not subject to this appeal, the appellate record contains the commitment/minute entry of June 14, 2010 reflecting that Mr. Carter’s sentence on J^Count 3 was vacated and he was sentenced under the habitual offender bill of information to the enhanced term of 25 years at hard labor.
 

 TRIAL
 

 On April 1, 2009, Detective Joseph Blackledge of the Kenner Police Department, one of several police officers who executed a search warrant at 2628 Phoenix Street in Kenner, arrested Mr. Carter there. According to Detective Black-ledge — the lead detective — officers acquired probable cause for a search warrant before then. In the interim, the officers conducted several surveillance sessions at that location. There they saw Mr. Carter walk to and from the driveway while meeting with several subjects. Detective Blackledge, an experienced narcotics detective, stated that the subjects, including Mr. Carter, apparently engaged in hand-to-hand transactions. The officers also saw Mr. Carter go from inside the house to the driveway-parked vehicle’s rearward portion. During the surveillance, Detective Blackledge never saw the vehicle move. It appeared to be inoperable because of the deflated tires and accumulation of debris around the area. Moreover, there was no license plate on the vehicle and officers discovered that the vehicle was not registered to Mr. Carter. Detective Blackledge testified that he obtained a search warrant for the vehicle at that location as well as the premises because he learned that Mr. Carter was dealing illegal narcotics from the parked car’s back area. He stated that based on his narcotics experience, drug dealers commonly hide their drugs someplace other than a residence.
 

 According to Detective Blackledge, on the date of the arrest, he was particularly focused on that vehicle’s area where, during the surveillance, the officers had often spotted Mr. Carter. As he approached that location, Detective Blackledge saw the vehicle backed into the driveway, its trunk open, and Mr. Carter at its rearward section. Despite the car’s location and the raised trunk, [.¡Detective Blackledge clearly saw Mr. Carter. Nothing obstructed his view. Upon spotting the officers, Mr. Carter threw a white plastic grocery bag into the trunk and slammed the trunk lid shut, thus confirming Detective Black-ledge’s belief that Mr. Carter was selling narcotics from the ear’s rearward section. Furthermore, a trained and certified narcotics K-9 dog sniffed the vehicle and alerted to the rearward section. Detective Blackledge ordered Mr. Carter to the ground while officers detained another female, who was also outside with Mr. Carter. Mr. Carter complied with the detective’s instruction and discarded the keys to the car. Detective Blackledge advised Mr. Carter of his rights, picked him up from the ground, retrieved the keys, and patted Mr. Carter. Detective Blackledge used the keys to open the trunk.
 

 
 *4
 
 Upon opening the trunk, Detective Blackledge spotted the white plastic grocery bag, along with other items, including a digital scale, a loaded .380 handgun, and a rifle.
 
 [1]
 
 The grocery bag, and other bags containing drugs (later learned to be marijuana and crack cocaine), were introduced into evidence without objection at trial.
 

 Raven Barrios, an expert in the analysis of controlled dangerous substances, testified that she analyzed evidence in this case. She analyzed the contents of a large plastic zip lock bag containing vegetative material. The material tested positive for marijuana, having a gross weight of 432.93 grams.
 

 She also analyzed “rock” specimens from the two smaller plastic bags that were contained in a large plastic bag. The material was found to contain cocaine having a gross weight of 18.68 grams.
 

 | Jn addition, she examined two grocery bags. Each contained various items. One bag contained three sandwich bags, and two grocery bag corners holding marijuana. One of the sandwich bags contained 19 sandwich bag corners each holding marijuana. The gross weight of the entire grocery bag was 77.33 grams.
 

 Ms. Barrios testified that the other grocery bag contained 10 sandwich bag corners, each containing vegetative material. She concluded that the material was positive for marijuana, having a gross weight of 262.89 grams.
 

 In considering the amounts of the drugs in this case, the type of packaging, and the digital scale, Sergeant Elvin Módica, an expert in the field of value, packaging, and distribution of controlled dangerous substances (specifically narcotics), testified that the amount of cocaine found in the two plastic bags indicated that the person possessed it with the intent to distribute it. Additionally, each one of the bags contained crack cocaine that was prepared for resale. Both Sergeant Módica and Detective Blackledge testified that digital scales are associated with drug sales. Sergeant Módica testified that the three bags of marijuana also contained amounts and packaging indicative of commercial sale.
 

 Based on the trial evidence, stipulations,
 
 [2]
 
 and testimony, the jury rendered its verdicts finding Mr. Carter guilty as charged on three counts.
 

 MOTION TO SUPPRESS
 

 At trial, the state introduced seized evidence resulting from a search warrant. Before trial, the trial judge conducted a hearing on a motion to suppress that evidence and denied the motion without reasons. The suppression hearing revealed that after receiving information from a confidential informant, who had proven reliable in the past, the police set up a controlled buy with Mr. Carter. Thereafter, the purchased drugs tested positive for cocaine. Then, within seventy-[two7 hours, the police sought and obtained a search warrant. The warrant described the premises with particularity. It authorized the search of the premises and any vehicle “located on the premises or vehicles found in immediate possession of persons found therein.” The police seized the evidence from the locked trunk of an inoperable vehicle that was parked in the driveway at the described residence. On appeal, Mr. Carter argues that the search exceeded the scope of the search warrant because (unlike the particularly described
 
 *5
 
 premises) there was only a general authorization to search any vehicle “located on the premises or vehicles found in immediate possession of persons found therein.” Thus, he asserts that the search warrant was constitutionally overbroad.
 

 Although the trial judge conducted a suppression hearing before trial, defense counsel never asked him to rule on the “constitutionally overbroad” issue nor did the defense state the grounds for challenging admission. Further, the record on appeal does not contain a motion to suppress.
 
 [3]
 

 Now for the first time on appeal, Mr. Carter argues that the trial judge erred in denying the motion because the search of the locked trunk of the immobile and inoperable vehicle was “clearly an unreasonable search beyond the scope of the search properly authorized by the warrant.”
 

 Louisiana courts have long held a defendant may not raise new grounds for suppressing evidence on appeal that he did not raise at the trial court in a motion to suppress.
 
 State v. Montejo,
 
 06-1807, p. 22 (La.5/11/10), 40 So.3d 952, 967,
 
 cert. denied, Montejo v. Louisiana,
 
 — U.S. -, 181 S.Ct. 656, 178 L.Ed.2d 513 (2010) (citations omitted).
 
 See:
 
 La.C.Cr.P. art. 841(A) (“An irregularity or error cannot be availed of after verdict unless it was objected to at [sthe time of occurrence.”). Accordingly, Mr. Carter has waived the argument that evidence should be suppressed because the search exceeded the scope of the search warrant.
 

 Even had this claim been preserved, it lacks merit, as we find that a warrant authorizing the search of a particularly described premises permits the search of the vehicle located on the premises targeted for the search and subject to the authority of the warrant. This is so because the vehicle is capable of concealing the sought-after contraband.
 
 State v. Smith,
 
 02-1842, p. 1 (La.9/20/02), 827 So.2d 1122, 1123 (per curiam) (citations omitted).
 

 JURY CHARGE
 

 After questioning the jury, the trial judge determined that the verdicts were legal. The jury indicated that only one (undisclosed) verdict was non-unanimous-11 to one. La.C.Cr.P. art. 782(A) authorizes non-unanimous verdicts “in which punishment is necessarily confinement at hard labor.” In such cases, “ten [of the twelve jurors] must concur to render a verdict.”
 
 Id. See also:
 
 La. Const, art. 1, § 17(A). Now for the first time on appeal, Mr. Carter argues that his conviction by the non-unanimous jury verdict is invalid because La.C.Cr.P. art. 782 violates the Sixth Amendment right to a jury trial and due process. Even assuming the assignment is before us, it lacks merit.
 

 The Louisiana Supreme Court and this Court have rejected the argument that a non-unanimous verdict in a case such as this, provided for by La.C.Cr. P. art. 782(A), violates the U.S. Fifth, Sixth or Fourteenth Amendments to the U.S. Constitution.
 
 State v. Bertrand,
 
 08-2311, p. 7 (La.3/17/09), 6 So.3d 738, 743;
 
 State v. Jacobs,
 
 07-887 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, 571-72.
 

 | ¡¿Previously, in
 
 Apodaea v. Oregon,
 
 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), the United States Supreme Court in a plurality decision determined that the United States Constitution did not man
 
 *6
 
 date unanimous jury verdicts in state court felony criminal trials.
 
 Bertrand,
 
 6 So.3d at 741. Mr. Carter asserts that the decision in
 
 Apodaea
 
 was wrong and subject to change in
 
 State v. Barbour,
 
 09-1258 (La.App. 4 Cir. 3/24/10), 35 So.3d 1142,
 
 writ denied,
 
 10-934 (La.11/19/10), 49 So.3d 396,
 
 cert.
 
 denied, - U.S. -, 131 S.Ct. 1477, 179 L.Ed.2d 302 (2011) (a case determining that Article 782 withstands constitutional scrutiny). At the time of the defense’s brief,
 
 Barbour
 
 was before the United States Supreme Court on certiorari. Cer-tiorari has since been denied and
 
 Apodaea
 
 has not been overturned.
 

 Therefore, even if preserved for appellate purposes, the assignment lacks merit.
 

 PROSECUTORIAL MISCONDUCT
 

 Mr. Carter’s allegations of prosecu-torial misconduct are based upon the assertion that the prosecutor allowed Detective Blackledge to testify fraudulently. First, he contends that Detective Black-ledge testified differently at the suppression hearing than he did in his search warrant affidavit when, at the hearing, unlike in the affidavit, the detective allegedly testified that he had a clear line of sight during the controlled purchase. Second, he asserts that the prosecutor allowed fraudulent information to be presented to the jury; namely, testimony of the controlled buy between himself and the confidential informant.
 

 The record discloses no contemporaneous objection to claims of prosecutorial misconduct.
 

 The contemporaneous objection rule is contained in La.C.E. art. 103(A)(1) and La.C.Cr.P. art. 841(A). It is specifically designed to promote judicial | inefficiency by preventing a defendant from gambling for a favorable verdict and then, upon conviction, resorting to appeal on errors which either could have been avoided or corrected at the time or should have put an immediate halt to the proceedings.
 
 State v. Taylor,
 
 93-2201, p. 7 (La.2/28/96), 669 So.2d 364, 368,
 
 cert. denied,
 
 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996). An irregularity or error cannot be availed of after verdict unless it was objected to at the time of its occurrence.
 
 State v. Ruiz,
 
 06-1755, p. 8 (La.4/11/07), 955 So.2d 81, 87 (citations omitted). This contemporaneous objection rule applies to claims of prosecutorial misconduct.
 
 State v. Hoffman,
 
 98-3118 (La.4/11/00), 768 So.2d 542, 582,
 
 opinion supplemented,
 
 00-1609 (La.6/14/00), 768 So.2d 592,
 
 cert. denied,
 
 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (2000).
 

 Accordingly, Mr. Carter has waived any error based on these allegations by his failure to enter a contemporaneous objection.
 

 Furthermore, the allegations are not supported by the record.
 

 First, the allegation that Detective Blackledge’s testimony was inconsistent does not support that charge of prosecu-torial misconduct. The statement in the affidavit is consistent with Detective Blackledge’s testimony at the suppression hearing.
 

 In the search warrant affidavit, Detective Blackledge attested that the confidential informant, who performed the controlled buy, walked to the suspected residence. He averred that he, Detective Blackledge, “was unable to maintain constant visual surveillance [of the confidential informant] due to the fact that the area [had] high pedestrian foot traffic and the persons residing in the area [knew] the undercover units.”
 

 At the suppression hearing, defense counsel asked Detective Blackledge whether, during the time that he conducted surveillance, he clearly saw the 11¾transactions
 
 *7
 
 or Mr. Carter standing behind the vehicle. The detective was confused and asked whether counsel was asking if he had a clear line of sight during the controlled purchase. Counsel clarified that he meant during the surveillance. Thereafter, Detective Blaekledge responded affirmatively. Counsel then clarified that he was not referring to the controlled purchase, and Detective Blaekledge again responded affirmatively.
 

 Second, although Detective Blaekledge testified at trial that Mr. Carter was the target of an investigation in which he observed Mr. Carter conducting hand-to-hand transactions, and actions for which the detective had probable cause to obtain a search warrant, Detective Blaekledge did not testify specifically about the controlled buy. Moreover, State’s Exhibit Number 6, the application for the search warrant, the search warrant, and the return, were introduced without objection into the record for record purposes only and not presented to the jury. Thus, the testimony surrounding the controlled buy occurred during the suppression hearing. To the extent that Mr. Carter alleges that such testimony at the suppression hearing was fraudulent, we find no record support for that allegation.
 

 We therefore conclude, based on the record before us, that even assuming the charge of prosecutorial misconduct was before the court, the assignment lacks merit.
 

 ERROR PATENT
 

 Our review of the record for error patent reveals two matters requiring a remand for correction.
 
 See:
 
 La.C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990).
 

 First, the commitments/minute entries, both on the original sentencing and the enhanced multiple bill sentencing, reflect that the sentence on Count 4 (felon in 1 ^possession of a firearm) was to run consecutively to the sentences on Count 1 (possession with intent to distribute marijuana) and Count 3 (possession with intent to distribute cocaine). However, unlike the transcript, these documents do not contain any language stating that the trial court also ordered Count 3 to run consecutively to any other sentence Mr. Carter might be serving. Whenever there is a conflict between the transcript and the minutes, the transcript prevails.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983). Accordingly, we remand this matter for correction of these two minute entries/commitments to additionally reflect that the sentence on Count 4 is to run consecutively to any other sentence Mr. Carter might be serving.
 

 Second, there are typographical errors in the fourth paragraph of the April 29, 2010 commitmenVminute entry. The fourth paragraph, a summary, incorrectly reflects that Counts 1 and 2 are to run concurrent to each other and consecutive to Count 3. Based on the transcript, the summary paragraph should have read that Counts 1 and 3 are to run concurrent to each other and consecutive to Count 4. Accordingly, we remand the matter for correction of the April 29, 2010 commitment/minute entry to reflect the proper counts.
 

 Furthermore, we direct the clerk of court to transmit the original of the respective commitments/minute entries to the officer in charge of the institution to which Mr. Carter has been sentenced, La. C.Cr.P. art. 892(B)(2);
 
 State ex rel. Roland v. State,
 
 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam), and to the legal department, the Department of Public and Safety Corrections (DOC).
 

 
 *8
 
 CONCLUSION
 

 Accordingly, for the reasons stated, we affirm and remand with instructions.
 

 AFFIRMED; REMANDED WITH INSTRUCTIONS.
 

 [1]
 

 . The defense stipulated in the jury's presence that Mr. Carter was the same individual who had two previous felony convictions; namely, possession of cocaine and possession with intent to distribute cocaine, both of which occurred within the last 10 years.
 

 [2]
 

 .
 
 See infra
 
 note 1.
 

 [3]
 

 . We glean from defense counsel’s questions during Detective Blackledge's cross-examination, that defense counsel was concerned about reliability; namely, the confidential informant's reliability and the basis for the officer's observations corroborating that information.