FREDERICKS HOMBERG WICKER, Judge.
|2Pefendant appeals his convictions for attempted aggravated assault with a firearm, aggravated criminal damage to property, possession of an unidentifiable firearm, possession with intent to distribute marijuana, and possession of cocaine. First, defendant assigns as error the denial of his motion to suppress the evidence, claiming that the search warrant at issue is unconstitutionally overbroad because it allowed for the search of any vehicle on the targeted premises. Second, defendant complains of the consecutive nature of his sentences and argues that the trial court imposed an unconstitutionally excessive sentence. Lastly, defendant challenges his conviction for attempted aggravated assault with a firearm, asserting that such a crime is not recognized in Louisiana law. We find that the trial court did not err in denying defendant’s motion to suppress the evidence or in sentencing defendant. We further find that attempted aggravated assault with a firearm is a proper responsive verdict in this case and affirm defendant’s convictions and sentences.

I»PROCEDURAL HISTORY

On March 16, 2010, the Jefferson Parish District Attorney filed a bill of information charging defendant, Shaun Barnett, with possession with intent to distribute marijuana in violation of La. R.S. 40:966(A) (count one), aggravated assault with a firearm in violation of La. R.S. 14:37.4 (count two), aggravated criminal damage to property in violation of La. R.S. 14:55 (count three), possession of an unidentifiable firearm in violation of La. R.S. 40:1792 (count four), and possession of cocaine in violation of La. R.S. 40:967(C) (count five). Defendant was arraigned and pled not guilty to all charges.
The matter proceeded to trial and on March 15, 2012, a 12-person jury returned verdicts of guilty as charged on counts one, three, four, and five. As to count two, the jury found defendant guilty of the responsive verdict of attempted aggravated assault with a firearm. On June 21, 2012, the trial court sentenced defendant to imprisonment as follows: on count one, seven years at hard labor; on count two, two and a half years at hard labor; on count three, seven years at hard labor; on count four, five years at hard labor without the benefit of parole, probation, or suspension of sentence; and on count five, five years at hard labor. The trial court ordered the sentences on counts one, two, three, and five to be served concurrently and the sentence on count four to be served consecutively to the sentence on count one. This timely appeal follows.

FACTUAL BACKGROUND

On January 18, 2010, at approximately 4:00 p.m., family and friends gathered at defendant’s mother’s home, located at 329 Pat Drive in Avondale, to celebrate Martin Luther King Day. Those present included defendant, defendant’s mother, defendant’s mother’s boyfriend, defendant’s four brothers, some of their girlfriends, and other friends.
_JjThanh Tran, the victim and a neighborhood acquaintance of defendant, testified that around 7:00 or 8:00 p.m. that evening, January 18, 2010, defendant asked him for a ride to defendant’s girlfriend’s house. Tran brought defendant to his girlfriend’s house in the 1200 block of Garden Road in *1159 Marrero and while he sat waiting in his vehicle, he observed defendant and his girlfriend fighting and “running back and forth.” Tran stated that defendant then ran up to the vehicle’s trunk and asked him to open it. Tran refused, fearing that defendant wanted to retrieve the crowbar inside the trunk to use as a weapon. Rather than comply with defendant’s request and become involved in defendant’s altercation with his girlfriend, Tran took off. As Tran drove off, defendant shot into Tran’s vehicle. Tran drove to the nearest gas station and told the clerk to call the police to report the incident.
Deputy Raymond Villani of the Jefferson Parish Sheriffs Office responded to the call and soon arrived at the gas station to speak with Tran. Deputy Villani noticed bullet holes in the body of Tran’s vehicle and determined the damage had been recently sustained as indicated by the absence of rust or oxidization to the vehicle as well as the fact that portions of shattered glass still hung in the vehicle’s window frame. No physical evidence was recovered linking the vehicle to the 1200 block of Garden Road, where Tran alleges the incident occurred. However, Deputy Villani testified that an anonymous witness reported four gunshots that evening on Garden Road.[1]
Contrary to Tran’s version of events, several people present at the Barnett home on January 18, 2010, testified that defendant never left the home that night. IsQuan Barnett, defendant’s brother, testified that he did not see defendant absent for any extended period of time and that he never saw defendant armed with a firearm. Daijaonia Hopson, Quan’s girlfriend, testified that the party at the Barnett home ended around 11:00 p.m. and that she did not see defendant leave the residence during the evening nor did she see him armed with a firearm. On cross-examination, however, Ms. Hopson admitted that she did not watch defendant at every moment throughout the evening. Defendant’s mother testified that defendant never left the party, nor did she see him with a firearm. She also stated that defendant was still at home when she left for work at 10:45 p.m.
After Tran reported the incident to police, Detective Henry Conravey of the Jefferson Parish Sheriffs Office presented a photographic lineup to Tran, who identified defendant as the person who shot into his vehicle. Following Tran’s identification of defendant, Detective Conravey obtained an arrest warrant for defendant and a search warrant for his mother’s residence at 329 Pat Drive in Avondale. On February 3, 2010, in preparation for execution of the search warrant, Detectives Brian Brinser and Glen Weber conducted surveillance of the residence. The detectives observed defendant exit the residence and proceed near a white vehicle parked inches from the side of the house. Officers briefly lost sight of defendant until he walked back to the front of the house. Defendant then walked away from the house onto Pat Drive, where officers arrested him and advised him of his rights.
Officers then conducted a search of the residence, which revealed two firearms— one pistol hidden in the bathroom and one assault rifle, with its serial number obliterated, located in the attic. During the search, officers also recovered a digital *1160 scale in a bedroom and an expired Louisiana identification card issued to defendant in a dresser drawer in that same bedroom. Detective Conravey testified |Rthat during the search, defendant’s mother informed him that the bedroom in which the officer recovered the digital scale and ID card belonged to defendant. However, at trial, Ms. Barnett testified she told officers that defendant did not have an assigned room in the house.[2]
Officers also searched a white Toyota Célica parked in the driveway alongside the residence. From that search, officers recovered seven small plastic bags of marijuana stuffed inside the vehicle’s fuel door and two rocks of crack cocaine in the vehicle’s passenger compartment. Lieutenant Daniel Jewell, Jr. of the Jefferson Parish Sheriffs Office, an expert in the packaging and distribution of narcotics, testified that the packaging of the marijuana found in the vehicle indicated it had been packaged for distribution. Lt. Jewell further testified that the presence of firearms and a scale inside the residence as well as the lack of paraphernalia associated with personal use, such as a pipe, indicates an intention to distribute the narcotics.
After defendant’s arrest, Detective Melvin Francis of the Jefferson Parish Sheriffs Office obtained two recorded statements from defendant.[3] In his first statement, defendant claimed ownership of the weapons found in the residence as well as ownership of the narcotics found in the vehicle. In his second statement, defendant denied Tran’s allegations of the events of January 18, 2010. Defendant denied that Tran brought him to his girlfriend’s house in Marrero and stated that he was at home in Avondale all evening on January 18, 2010. At trial, defendant 17claimed Detective Francis coerced him to confess to possession of the drugs and firearms recovered. Defendant also alleged that when he said something unsatisfactory to Detective Francis in his statement, the detective rewound the tape and recorded over that portion of the statement.[4]
*1161 At trial, defendant denied possession of the firearms or drugs recovered from the search. Regarding the firearms, defendant testified that his mother’s ex-boyfriend, George Curtis Williams, lived at the Avondale residence from 1997 until 2009. Defendant testified that Williams owned two rifles while he resided with defendant’s mother. However, defendant also testified that the rifle recovered in the attic did not appear to be one of Williams’ rifles. Ms. Barnett, however, contradicted her son’s testimony and testified that Williams had only one hunting rifle and that the rifle discovered in the attic belonged to Williams. Defendant denied ever touching or discharging Williams’ rifles and further denied ever having contact with the two weapons seized from the residence.
Defendant also denied ownership of the drugs found in the vehicle. When questioned as to why he walked alongside the house on February 3, 2010, during the detective’s surveillance, defendant testified that he passed by the side of the house to put the trash out. Both defendant and his mother testified that the Toyota Célica in the driveway had been inoperable for some time.[5] Defendant testified that he did not use the vehicle nor did he place any drugs in the vehicle.
^Regarding defendant’s relationship with Tran, defendant testified that he knew Tran from the neighborhood and that Tran had previously given him a ride to his girlfriend’s house in December of 2009. Defendant also testified that Tran sold him a 60-inch flat screen television, for which defendant did not pay the full amount.[6] Defendant denied asking Tran for a ride to his girlfriend’s house on January 18, 2010; he further denied any altercation with his girlfriend or being armed that night. Defendant maintained that he remained at his mother’s home all afternoon and evening on January 18, 2010.

DISCUSSION

In defendant’s first assignment of error, he argues that the trial court erred in denying his motion to suppress the evidence seized in the vehicle outside the residence. Officers conducted a search of the vehicle parked alongside the residence pursuant to a search warrant for “firearms, magazines, ammunition, or other firearm equipment.” The warrant permitted the officers to search the residence at “329 Pat Drive, Avondale, Louisiana, outlying curtilage, and any vehicles, movables, and containers on the property.” At the suppression hearing, defendant argued that the search of the vehicle’s fuel door exceeded the scope of the warrant because it is inconceivable that a firearm could be located in a vehicle’s fuel door. The trial court found that the search of the vehicle’s fuel door did not exceed the scope of the search warrant because the warrant specifically permitted the search of curtilage as well as any vehicle parked on the premises. The trial court further recognized that a fuel door is capable of concealing rounds of ammunition.
On appeal, defendant raises a different argument-that the search warrant issued is unconstitutionally overbroad because it authorized the search of “any 19vehicles” on the premises. Defendant argues that the search warrant at issue is unconstitutionally overbroad and does not describe with *1162 particularity the vehicle the officers searched.
First, we find that defendant has waived his argument that the search warrant is unconstitutionally overbroad as defendant failed to raise that argument at trial or at the hearing on his motion to suppress. Louisiana courts have long held that a defendant may not raise new grounds for suppressing evidence on appeal that he did not raise at the trial court in a motion to suppress. State v. Carter, 10-973 (La.App. 5 Cir. 8/30/11), 75 So.3d 1, 7. However, we find that even if defendant had raised this argument in the trial court, the argument lacks merit. “[A] warrant authorizing the search of a particularly described premises permits the search of the vehicle located on the premises targeted for the search[.]” Id. at 8. A vehicle is capable of concealing sought-after contraband. Id. At trial, Detective Adrian Thompson testified that a vehicle’s fuel door is a common hiding place for contraband and is of sufficient size to conceal rounds of ammunition and other contraband associated with firearms. Accordingly, this assignment is without merit.
In his second assignment of error, defendant challenges his conviction for attempted aggravated assault with a firearm, asserting that it is not a recognized crime under Louisiana law. At the time of the offense[7], La. R.S. 14:37.4 defined aggravated assault with a firearm as “an assault committed by the discharge of a firearm.” Assault is defined by La. R.S. 14:36 as “an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery.” (Emphasis added.)
|inOn appeal, defendant argues that because an assault is merely an attempt to commit a battery, he cannot be convicted of attempting to attempt to commit a crime. The state responds that defendant’s conviction is proper because attempted aggravated assault with a firearm is a responsive verdict to a charge of aggravated assault with a firearm in cases where the state does not rely on the attempted-battery definition of assault, but rather relies on the alternative theory or definition of assault, ie., the intentional placing of another in reasonable apprehension of receiving a battery. We agree.
A plain reading of the statute shows that an assault is an attempt to commit a battery or the intentional placing of another in reasonable apprehension of receiving a battery. The use of the word “or” in the statute indicates the disjunctive. La. C.Cr.P. art. 6(2).
Defendant however cites the comments to the attempt statute, La. R.S. 14:27, which specifically provide, “[s]ince there can be no such thing as an attempt to commit an attempt, there can be no attempt to commit either an aggravated assault or a simple assault. Those offenses are themselves in the nature of attempts to commit a crime.”[8]
*1163 First, we recognize that the article’s comments do not constitute parts of the law. La.C.Cr.P. art. 10. Furthermore, a historical analysis of the definition of assault in Louisiana law reveals that, at the time the reporters drafted the comments to La. R.S. 14:27, the article defined assault only as an offer or attempt to commit a battery.
|nIn 1940, the Louisiana legislature instructed the Louisiana Law Institute to prepare a draft or “Projet of the Criminal Code for the State of Louisiana.” The comment to article 27, the attempt article, in the 1940 Projet contains the exact language as the current comment under La. R.S. 14:27: “[sjince there can be no such thing as an attempt to commit an attempt, there can be no attempt to commit either an aggravated assault or a simple assault.” However, the 1940 Projet defined an assault only as “an offer or attempt ... to commit an injury on the person of another.” Subsequently, at the time the legislature enacted the Louisiana Criminal Code in 1942, the definition of assault had significantly changed; the comments under the attempt statute, La. R.S. 14:27, however, remained unchanged.[9]
Dale E. Bennett, one of the original reporters appointed by the Law Institute to draft the 1940 Projet, later discussed the historical development of the Louisiana Criminal Code and recognized that the 1942 Criminal Code amended the definition of assault “to include either an ‘attempt’ to commit a battery or the ‘placing of another in reasonable apprehension of receiving a battery.’” Dale E. Bennett, The Louisiana Criminal Code, A Comparison with Prior Louisiana Law, 5 La. L.Rev. 29 (1942-44).[10] Therefore, subsequent to the drafting of the attempt article’s comments, the definition of assault significantly changed to include two theories of culpability: an “attempt to commit a battery” and “the intentional placing of another in reasonable apprehension of receiving a battery.”
Therefore, we find that the 1940 comment, indicating that there can be no such thing as an attempt to commit an assault, only applies to the attempted-battery definition or theory of culpability and does not apply when the state relies on the | ^alternative definition or theory of culpability, i.e., “the intentional placing in apprehension of receiving a battery.”[11]
Additionally, we find that attempted aggravated assault with a firearm is a proper responsive verdict to a charge of aggravated assault with a firearm. See Cheney C. Joseph & P. Raymond Lamoni-ca, Criminal Jury Instructions, 17 La. Civ. L. Treatise, § 10.37 (3d ed.). Although La.C.Cr.P. art. 814 does not list responsive verdicts for La. R.S. 14:37.4, La.C.Cr.P. art. 815 provides that “[i]n all cases not provided for in Article 814, the following verdicts are responsive: (1) Guilty; (2) Guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser *1164 offense a misdemeanor; or (3) Not Guilty.” The Louisiana Supreme Court has held that La. R.S. 14:27(0 makes an attempt a lesser included offense of the charged crime. State v. Ford, 407 So.2d 688, 691 (La.1981).
Furthermore, it is evident from the record in this case that defendant’s charge of aggravated assault with a firearm was based on the latter definition of assault, i.e., the intentional placing of another in reasonable apprehension of receiving a battery. First, the trial court instructed the jury that assault is only “the intentional placing of another in reasonable apprehension of receiving a battery.” Second, the court instructed the jury that: “in order to find the defendant guilty of Aggravated Assault with a Firearm, you must find: (1) that the defendant discharged the firearm; and (2) that the defendant intentionally placed Thanh V. Tran in reasonable apprehension of receiving a battery with a firearm.” Therefore, the record supports a finding that the state’s theory of culpability rests on the alternative definition of assault and thus, pursuant to the reasoning discussed [i<¡above, the responsive verdict of attempted aggravated assault with a firearm is appropriate in this case.[12] This assignment is without merit.
In his third assignment of error, defendant complains of the consecutive nature of his sentences. The trial court ordered defendant’s sentence on count four for possession of an unidentifiable firearm to be served consecutively with defendant’s sentence on count one for possession of marijuana with intent to distribute. Defendant challenges only the consecutive nature of his sentences and argues that the imposition of consecutive sentences on counts one and four results in an unconstitutionally excessive sentence.
The record reflects that defendant failed to file a motion to reconsider his sentence in the trial court. This Court has held that failure to file a motion to reconsider sentence or to state the specific grounds upon which the motion is based limits a defendant to a bare review of the sentence for unconstitutional excessiveness. State v. Hunter, 10-552 (La.App. 5 Cir. 1/11/11), 59 So.3d 1270, 1272. Further, this Court has held that “when the consecutive nature of sentences is not specifically raised in the trial court ... the defendant is precluded from raising the issue on appeal.” State v. Escobar-Rivera, 11-496 (La.App. 5 Cir. 1/24/12), 90 So.3d 1, 8, writ denied, 12-0409 (La.5/25/12), 90 So.3d 411. In this case, defendant failed to file a motion to reconsider sentence or specifically object to the consecutive nature of his sentences in the trial court. Accordingly, defendant is not entitled to review of the consecutive nature of his sentences on appeal.[13]
| ^CONCLUSION
For the reasons provided herein, defendant’s convictions and sentences are affirmed.

ERRORS PATENT

We have reviewed the record for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. *1165 1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The record reveals that defendant’s sentence on his possession with intent to distribute marijuana conviction is illegally lenient because the trial court failed to impose the mandatory fíne. La. R.S. 40:966(B)(3) provides that a person convicted of this offense, “shall ... be sentenced to a term of imprisonment at hard labor for not less than five nor more than thirty years, and pay a fine of not more than fifty thousand dollars.” Therefore, defendant was exposed to a sentencing range of five to thirty years at hard labor and a fine of no more than fifty thousand dollars.
This Court has the authority to amend an illegally lenient sentence. La. C.Cr.P. art. 882. However, such authority is permissive rather than mandatory. State v. Pitt, 09-1054 (La.App. 5 Cir. 4/27/10), 40 So.3d 219, 224. While this Court has held that statutes providing for a fine of “not more than” a specified amount do require a mandatory fine, this Court has also recognized that the matter is not free from doubt. State v. Kerlec, 06-838 (La.App. 5 Cir. 4/11/07), 957 So.2d 810, 815, writ denied, 07-1119 (La.12/7/07), 969 So.2d 626. See also State v. Francois, 06-0788 (La.App. 3 Cir. 12/13/06), 945 So.2d 865 (holding that when a trial court does not impose a fine in a situation where the statute authorizes a fine of “not more than” a certain amount, the court impliedly imposes a $0 fine and there is no error requiring remand.) Further, this Court has, as a matter of Indiscretion, refrained from amending an illegally lenient sentence to impose a fine in a criminal matter involving an indigent defendant. See State v. Pitt, 40 So.3d at 224.
in this case, where the state did not object at sentencing and where defendant is an indigent defendant[14], we decline to remand this matter for correction of any error in the trial court’s failure to impose a fine under La. R.S. 40:966(B)(3).
However, the record does contain an error patent that requires this Court to remand this matter to the trial court for correction of the commitment. The statutory restrictions on count four (possession of an unidentifiable firearm) in the commitment are not consistent with those in the transcript. The transcript indicates that the trial court sentenced defendant on count four without the benefit of probation, parole, or suspension of sentence. The commitment, on the other hand, indicates that the trial court sentenced defendant on count four without the benefit of probation or suspension of sentence. The restrictions as specified in the transcript are proper pursuant to La. R.S. 40:1792. When there is a discrepancy between the minute entry and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983); State v. Hall, 03-906 (La.App. 5 Cir. 5/26/04), 875 So.2d 996, 1007, writ denied, 04-1875 (La.12/10/04), 888 So.2d 834. However, the commitment must be corrected to reflect the restrictions imposed by the trial judge.
Accordingly, we remand this matter to the trial court for correction of the commitment to reflect that the trial court sentenced defendant on count four without the benefit of probation, parole, or suspension of sentence. The Clerk of Court for the Twenty-Fourth Judicial District Court is directed to transmit the original of the minute entry to the officer in charge of the institution to which |1fidefendant has been *1166 sentenced as well as to the legal department of the Department of Corrections. See La. C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam); State v. Shaw, 12-686 (La.App. 5 Cir. 1/16/13), 108 So.3d 1189, 1199.

AFFIRMED; REMANDED

. No officers could locate defendant’s girlfriend, Katrice Batiste, for interview. However, detectives later interviewed an individual at the apartment, who identified himself as Katrice’s brother. He told investigating officers that his sister had a boyfriend named Shaun and that there had been a recent altercation between Shaun and Katrice. This individual showed officers a damaged screen door at the apartment, which he theorized resulted from the recent altercation.

. At trial, defendant testified that in January and February of 2010, he was living with a cousin in Houma, but that he sometimes slept at his mother’s residence at 329 Pat Drive in Avondale. Defendant’s mother also testified that from 2008 to 2010, defendant did not live with her in Avondale, though he came by "every now and then.” Both defendant and his mother testified that defendant did not have an assigned bedroom at the residence. Defendant stated that he has slept throughout the house, in the living room and other rooms, including the bedroom where the officers recovered tire scale and his ID card. On the other hand, defendant's brother, Quan, offered conflicting testimony. Quan testified that in January of 2010, defendant resided at 329 Pat Drive in Avondale and slept there every night. Further, in defendant's statements to police, he provided his address as 329 Pat Drive in Avondale.

. Prior to the statements, Detective Francis advised defendant of his Miranda rights with a rights of arrestee form. As the detective read defendant his rights, defendant initialed the form, indicating his understanding thereof. Defendant then signed his name, again indicating he wished to waive his rights and give a statement.

. Defendant indicated that Detective Francis acted in this manner to get back at defendant’s mother, who defendant asserts had rebuffed the detective's advances in the past. Ms. Barnett testified that she has known Detective Francis since 2004, at which time they exchanged telephone numbers and Detective Francis asked Ms. Barnett out on a date. Ms. Barnett declined the detective’s advances. On rebuttal, Detective Francis denied these allegations, testifying that he has never had Ms. Barnett’s telephone number and that he never asked her out. He stated that he knows Ms. Barnett through prior investigations of incidents with Ms. Barnett's sons and from patrolling the neighborhood for years. He further testified that he did not force or threaten defendant into confessing, nor did he rewind and re-record the tape.

. Detective Adrian Thompson also testified that the vehicle appeared inoperable. Defendant’s mother testified that one of her sons' friends often slept in the abandoned vehicle and that one of her son’s girlfriends had slept in the vehicle on one occasion.

. Defendant’s mother testified that Tran called numerous times asking for the money from the television purchase. Tran, however, denied ever selling defendant a television.

. It is well settled that the law in effect at the time of the commission of the offense applies. State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518, 520.

. The jurisprudence supporting defendant's position relies on this comment. See State v. Presley, 99-802 (La.App. 3 Cir. 3/1/00), 758 So.2d 308 (wherein the Third Circuit vacated the defendant’s conviction pursuant to a guilty plea to attempted assault by drive-by shooting, citing the comments to La. R.S. 14:27); State v. Earnes, 365 So.2d 1361 (La.1978) (wherein the Louisiana Supreme Court held that there is no such thing as an attempt to incite a riot, citing the comments to La. R.S. 14:27); but see also State v. Jenkins, 09-1551 (La.App. 4 Cir. 6/30/10), 45 So.3d 173 (wherein the Fourth Circuit affirmed the defendant’s conviction of attempted aggravated assault upon a peace officer with a firearm).

. The comment discussed originates from a 1940 edition of Clark and Marshall, Law of Crimes (4th Ed.1940) 156, § 114(d). The 1940 edition of Clark and Marshall, Law of Crimes also stated that a simple assault is “nothing more than an attempt to commit a battery.”

. The current language in the article is identical to the language in the 1942 version of the article.

. See 17 La. Civ. L. Treatise, Criminal Jury Instructions § 10:37 (3d ed.) for an excellent discussion of the 1940 comment to the attempt article and its impact on responsive verdicts for La. R.S. 14:37.4 (aggravated assault with a firearm).

. See 17 La. Civ. L. Treatise, Criminal Jury Instructions § 10:37 (3d ed.) (stating that "[i]f the state will rely on a theory of placing the victim in apprehension, the attempt responsive verdicts should be given.... However, if the state utilizes the theory of attempt to commit a battery, the attempt verdicts are not responsive because the completed offense is in the nature of an attempt.”)

. Nevertheless, a review of the record reflects that defendant’s complained of sentence on count four is not unconstitutionally excessive and is the mandatory sentence required under La. R.S. 40:1792.

. The record reflects that defendant is represented on appeal by the Louisiana Appellate Project, which provides appellate legal services for indigent defendants in criminal matters.