575 So.2d 452 (1991)
STATE of Louisiana
v.
Patricia WILLIAMS, a/k/a Pat Jones.
No. 89-KA-1814.
Court of Appeal of Louisiana, Fourth Circuit.
January 31, 1991.
Writ Denied April 26, 1991.
*453 Harry F. Connick, Dist. Atty., Val M. Solino, Asst. Dist. Atty., New Orleans, for the State.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for defendant.
Before ARMSTRONG, PLOTKIN and BECKER, JJ.
PLOTKIN, Judge.
The issue in this appeal is whether the trial court erred by admitting into evidence prior bad acts of the defendant, namely, previous heroin usage, her self-admission into a drug treatment program, and the arrests on drug charges of several persons she knew.
Defendant Patricia Williams was charged with two counts of distribution of heroin in violation of LSA-R.S. 40:966(A)(1) and 40:964, Schedule I (B)(11). She pleaded not guilty to both charges. The jury found her guilty as charged on both counts. She was sentenced to two concurrent life sentences at hard labor without benefit of parole, probation or suspension of sentence. We reverse the conviction and sentences and remand for a new trial.
The New Orleans Police Department conducted an undercover narcotics operation called "Operation Pitter Pat" for the purpose of identifying street level drug dealers. Officer Paul Landry was the undercover agent who purchased drugs from the dealers, while other officers verified the suspects' identification and provided backup.
On November 30, 1987, Officer Landry observed a black woman outside Rose Tavern selling drugs. He approached her and asked if she had drugs for sale. She responded that she had "dope," the street name for heroin. Landry gave her $20. The woman went inside Rose Tavern, and then beckoned for Landry to enter, where she handed him a tin foil packet containing a substance found later to contain heroin. Landry put the heroin in his pocket. He then made a second buy from another suspect at the same location. Officer Evans then went to the street in front of the tavern and spoke to the woman, who identified herself as "Pat Jones." During this conversation, Landry drove by and verified that they were speaking with the correct suspect.
On December 2, 1987, Landry again went to Rose Tavern, where he saw the same woman. When he told her he wanted to buy heroin, she went to the trunk of a black car, parked nearby, and took something out. She and Landry entered the door of Rose Tavern where he gave her $25 and she gave him a tin foil packet of a substance later identified as heroin.
Officer Evans checked the name "Pat Jones" in the computer and found a picture of a different woman. Landry verified that the picture was not of the woman who *454 sold him drugs. The defendant was not arrested in the initial roundup of drug sellers at the close of the undercover operation. She was arrested several months later after a call to Officer Evans from a confidential informant. Officer Landry identified her as the woman who had sold him the heroin.
The defendant testified at trial. She did not specifically remember where she was on November 30 and December 2, 1987. However, she stated that she was generally at home with her children in the late afternoon hours. She claimed that she had been misidentified and that the real Pat Jones was the one who had sold the heroin.
On cross examination of the defendant during trial, the prosecutor asked the defendant approximately eleven times if she used heroin. The prosecutor also asked questions concerning the defendant's acquaintance with several persons who had been arrested in "Operation Pitter Pat," and the defendant's self-admission to New Orleans General Hospital shortly after the "Pitter Pat" arrests. The defense objected to all of these questions. The defense had not opened the door to questioning on these issues during direct examination. On redirect, the defense asked further questions concerning the defendant's use of drugs and the reasons for her entry into the drug treatment program at that particular time.
The defense moved for a mistrial when the prosecutor questioned the defendant about other offenses during cross examination. The motion was denied.
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, refers directly or indirectly to: ...
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible."
LSA-C.Cr.P. Art. 770.
The defendant contends that the trial court erred in admitting this testimony for two reasons. First, the information concerning her use of drugs constituted evidence of "other crimes" which the state should not have been allowed to introduce absent a Prieur hearing. State v. Prieur, 277 So.2d 126 (La.1973). Second, evidence concerning the defendant's character may only be raised by the accused, which was not done in this case, and only then could the state use such character evidence and solely to rebut the issues raised by the defense.
The Prieur requirements are not applicable to this case because the "other crimes" evidence was not introduced by the state in its case in chief by extrinsic evidence, but was elicited from the defendant herself on cross-examination. The state had not planned in advance to introduce such evidence, of which it had no prior knowledge, and thus could not have possibly requested the holding of a Prieur hearing prior to trial.
The appellant's second contention, that the evidence was improperly introduced to show her "bad character," has merit. Under La.C.E. Art. 404(B)(1), "evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he [or she] acted in conformity therewith." Exceptions to this rule exist when the evidence of other crimes is used to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the" offense. Id. In addition, "[p]articular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his [or her] character for truthfulness." La.C.E. Art. 608(B). This paragraph prohibits cross-examination of a witness as to specific instances of his or her conduct. Comment (b) to La.C.E. Art. 608(B). Only actual convictions are admissible upon issue of a defendant's credibility, and other "bad acts" of which the defendant has not been convicted are not. La.C.E. art. 609.1. The prosecutor's questioning of the defendant as to her possible prior drug use is not harmless error under LSA-C.Cr.P. art. 921. Such questioning constitutes grounds for a *455 mistrial or for a reversal of a conviction. State v. James, 569 So.2d 135, 138 (La.App. 1 Cir.1990). See LSA-C.Cr.P. art. 770(2) and State v. Meshell, 332 So.2d 767, 769 (La.1976).
In addition, when the defendant was cross examined by the state, she was asked the amount of her bond set by the magistrate. She replied that it was $100,000. Thereafter, the prosecutor asked if she had posted the bond. She replied that she had and that her sister had actually put up the money. On further questioning the defendant stated that she did not know where her sister got the money or what her sister's annual salary was in her job working for the City. The defense objected to the statement that the amount of the bond was $100,000 and stated that the amount set according to the record was $10,000. The record shows that the defendant was released only on a $10,000 personal recognizance bond on July 20, 1988. After indictment on September 8, 1988, capias was issued and bond was set at $100,000 on each count. The defendant was not released on this bond.
The state cannot use incorrect factual evidence that it knows or should know from the record is untrue and which creates an improper inference or conclusion. When the defendant answered incorrectly on cross examination concerning an undisputed fact contained in the record, namely, the amount of her bond, the state has an affirmative duty not to utilize the false information. The state also should have known that no money was actually posted by the defendant or by her sister for release on bond.
During closing argument, the prosecutor commented upon the defendant's posting of $100,000 bond, again utilizing this incorrect information in an apparent attempt to get the jury to infer that the defendant had a large quantity of drug money. The prosecutor said: "This is also a woman that managed to post $100,000 bond and has a life other than." The objection of the defense was overruled. The jury was not admonished or instructed concerning the misstatement of the amount of the bond. Under LSA-C.Cr.P. Art. 774, the scope of closing argument is restricted to "evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." This article further states that the "argument shall not appeal to prejudice."
As a general rule, even if a prosecutor's comment falls outside the proper scope of argument, a mistrial is not warranted unless the reviewing court is thoroughly convinced that the jury was influenced by the remarks and that such influence affected the verdict. State v. Hatcher, 568 So.2d 578, 585 (La.App. 4 Cir.1990), citing State v. Winn, 412 So.2d 1337 (La. 1982). The standard of review is whether the prosecutor's comments in closing argument rendered the trial fundamentally unfair and the resulting conviction a denial of due process. Darden v. Wainwright, 477 U.S. 168, 178-81, 106 S.Ct. 2464, 2470-71, 91 L.Ed.2d 144 (1986).
In this case, the prosecutor's comment that the defendant had posted $100,000 bond, without the economic ability to do so, is so egregiously fallacious and outside the scope of the record, that there can be no doubt that it influenced the jury. The remark was fundamentally prejudicial. The damage was compounded in the light of the erroneous rulings which allowed testimony to be admitted concerning the defendant's former drug use and that some of her acquaintances had been arrested in Operation Pitter Pat.
The prosecutor's questions concerning the defendant's use of heroin and admission to the hospital appear to have been for the sole purpose of creating an image of bad character, that is, that the defendant was a serious drug addict. The reference was not fleeting or accidental. The state made a deliberate effort to inform the jury of this information. Such a use of other crimes or acts is not admissible in evidence.
Such an argument could only arouse the prejudice of the jury, by inviting the jury to decide the guilt or innocence of the defendant on the basis of emotions rather than *456 on that of the facts presented. The common prejudice against drug users and their associates is so great that, if improperly admitted into evidence, it would trigger bias against the defendant so as to deprive the defendant of a fair trial. The principle issue in the trial was the credibility of the defendant as opposed to the credibility of the police officers. The improperly admitted information so tainted the credibility of the defendant that her trial was fundamentally unfair. As Judge Rubin stated:
The wisdom of experience is embodied in the aphorism that the scent of a skunk thrown into the jury box cannot be wiped out by a trial court's admonition to ignore the smell.
Reed v. General Motors Corp., 773 F.2d 660, 664 (5th Cir. 1985).
"The denial of a mistrial upon the motion of a defendant, when the motion is based properly on one of the grounds listed in article 770, is `per se a substantial violation of a statutory right.'" State v. Nuccio, 454 So.2d 93, 102 (La.1984), citing State v. Green, 315 So.2d 763, 765 (La.1975).
The trial court was clearly erroneous in failing to grant the defendant's motion for a mistrial. The court did not even attempt to mitigate the harm caused by such testimony by admonishing the jury.
For the above reasons, defendant's conviction and sentences are reversed, and the case is remanded for further proceedings consistent with our opinion herein.
CONVICTION AND SENTENCE REVERSED; REMANDED TO TRIAL COURT FOR FURTHER PROCEEDINGS.
ARMSTRONG, J., concurs.
BECKER, J., concurs with reasons.
BECKER, Judge, concurring with reasons.
Although I agree with the result reached by the majority due to the prosecution's continuous use of false information during cross examination and argument, I disagree with the majority's treatment of assignment of error number 2 as it pertains to the questions asked the defendant on cross examination with regard to her drug usage and her admittance to the hospital. Although use of other criminal acts are generally excluded under La.C.E. art. 404(B)(1), they are permissible, if relevant, to show motive, opportunity, interest etc. State v. Dotson, 260 La. 471, 256 So.2d 594 at 601 (1971). Therefore, those questions could have been highly relevant to establish the defendant's motive for the sale of heroin, i.e., as a means of supporting her habit.