STATE OF LOUISIANA      *      NO. 2023-KA-0166

VERSUS      *

DARREN BRIDGES      *      COURT OF APPEAL

     FOURTH CIRCUIT

     *     

     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 538-512, SECTION "SECTION L"
Judge Angel Harris
* * * * * *
**Judge Nakisha Ervin-Knott**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Tiffany Gautier Chase,
Judge Nakisha Ervin-Knott)

Jason Rogers Williams
District Attorney
Brad Scott
Chief of Appeals
Zachary M. Phillips
Assistant District Attorney
ORLEANS PARISH
619 South White Street
New Orleans, Louisiana 70119

     COUNSEL FOR STATE OF LOUISIANA

Mary Constance Hanes
LOUISIANA APPELLATE PROJECT
P.O. Box 4015
New Orleans, Louisiana 70178-4015

Darren Bridges #534935
Elayn Hunt Correctional Center
P.O. Box 174
St. Gabriel, Louisiana 70776

     COUNSEL FOR DEFENDANT/APPELLANT

         **AFFIRMED**
         **MAY 17, 2024**

The defendant, Darren Bridges ("Defendant"), seeks review of his convictions for first degree murder of a peace officer; possession of buprenorphine; possession with intent to distribute cocaine, alprazolam, and tramadol; obstruction of justice; and attempted aggravated assault on a peace officer with a firearm. For the reasons that follow, we affirm the Defendant's convictions.

**STATEMENT OF THE FACTS**

In the early morning hours of October 13, 2017, four New Orleans Police Department ("NOPD") officers, assigned to the NOPD Seventh District Task Force, were conducting a proactive patrol in New Orleans East. Officer Michael Sartain ("Officer Sartain") and Officer Marcus McNeil ("Officer McNeil") were together in a marked NOPD vehicle, with Officer Sartain as the driver and Officer McNeil as the passenger. In another marked NOPD vehicle, Officer Alexander Kelly ("Officer Kelly") and Officer Stephen Stephano ("Officer Stephano") were together, with Officer Kelly as the driver and Officer Stephano as the passenger. The officers were patrolling an area in New Orleans East near Tara Lane and Cindy Place, a residential neighborhood known for illegal drug activity and other criminal activity. The

officers entered Tara Lane from the South I-10 service road and drove towards Lake Forest Boulevard.

According to Officer Kelly, he drove to the back of one of the buildings in the apartment complex and noticed a group of females. Officer Stephano glanced into the courtyard and saw a man – later identified as the Defendant – who looked suspicious to him, as the man appeared to be trying to get away from the police officers. Officer Stephano noted that Defendant had a multicolored backpack and wore a white tank top. Simultaneously, from the other vehicle, Officer Sartain also observed Defendant. Officer Sartain testified that moments after his observation, the Defendant took off running towards the I-10 service road near Tara Lane. Officer Sartain notified Officers Kelly and Stephano that Defendant was on the run, and the officers proceeded to position themselves in a way to create a perimeter around him.

Officer Sartain turned his vehicle around and proceeded towards Cindy Place. As Officer Sartain turned onto Cindy Place, Officer McNeil exited the vehicle and took off running in order to cut off the Defendant. Officer Sartain went back around to Tara Lane to block off the other side. Officer Kelly drove the other police vehicle toward the 6800 block of Tara Lane, where the Defendant was last seen running. Officer Stephano exited the vehicle to assist Officers Kelly and Sartain establish the perimeter. In his pursuit of the Defendant, Officer McNeil ran down Cindy Place out of view of the other officers. Officers Sartain and Kelly parked and exited their respective vehicles.

Suddenly, two gunshots rang out, followed by a pause, and then a third gunshot. Officers Sartain, Kelly, and Stephano immediately ran in the direction of the gunfire's sound. Officer Stephano observed Defendant running up the street with a gun in his hand. Officer Stephano chased Defendant, and eventually drew his

firearm. As Officer Stephano and Defendant rounded the corner, Defendant raised his pistol in Officer Stephano's direction. Officer Stephano immediately fired three rounds at him, repositioned himself, and fired two more rounds. After firing the final round, Officer Stephano saw Defendant fall. Then, Officer Stephano ran back and tried to find Officer McNeil, but he was unable to get over the fence. He circled back to the spot where Defendant was shot and observed blood on the ground; however, Defendant was gone. Officer Stephano followed the trail of blood until it ended at an apartment with keys in the door. He assisted some officers with barricading the door to prevent the Defendant from escaping until the SWAT team arrived.

Sergeant Ray Jones, who supervised the Seventh District Task Force, arrived on the scene and saw Officer McNeil lying on the ground unresponsive. He and Officer Kelly helped paramedics lift Officer McNeil onto a stretcher, and an ambulance transported him to the hospital. Officer McNeil died that night as a result of sustaining multiple gunshot wounds.

As part of their investigation, the police executed a search warrant of Defendant's apartment and several items were recovered, including gray tennis shoes with blood on them; a blue basketball jersey with blood on it; gray sweatpants with blood on them; and a revolver that was found inside a boot. The bullets that were recovered from Officer McNeil's body were determined to have been fired from the revolver found inside Defendant's apartment. Additionally, the backpack Defendant was seen wearing on the night of the shooting was recovered, and several narcotics were found inside: 50 red tablets of tramadol; 16 blue tablets of alprazolam; several white tablets of alprazolam; 24 small plastic bags all containing a total of 2.3 grams of powder cocaine; 11.3 grams of crack cocaine; and an amount of buprenorphine.

3

## PROCEDURAL HISTORY

On November 16, 2017, Defendant was charged by grand jury indictment with the following eight counts – (1) Count One: first degree murder of a peace officer, a violation of La. R.S. 14:30(A)(2); (2) Count Two: possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1; (3) Count Three: possession with intent to distribute buprenorphine, a Schedule III controlled dangerous substance, a violation of La. R.S. 40:968(A)(1); (4) Count Four: possession with intent to distribute cocaine, a Schedule II controlled dangerous substance, a violation of La. R.S. 40:967(A)(1); (5) Count Five: possession with intent to distribute alprazolam, a Schedule IV controlled dangerous substance, a violation of La. R.S. 40:969(A)(1); (6) Count Six: possession with intent to distribute tramadol, a Schedule IV controlled dangerous substance, a violation of La. R.S. 40:969(A)(1); (7) Count Seven: obstruction of justice, a violation of La. R.S. 14:130.1; and (8) Count Eight: aggravated assault on a peace officer with a firearm, a violation of La. R.S. 14:37.2 (A). On November 29, 2017, Defendant pled not guilty to all charges.

Prior to trial, the State and Defendant engaged in active motion practice. Pertinent to this appeal, Defendant filed a motion to quash the short form indictment; the trial court denied the motion. Additionally, Defendant filed a motion to sever Counts Two through Six from Counts One, Seven, and Eight. The State agreed to sever Count Two, and the trial court denied the motion to sever as to Counts Three through Six.

Trial commenced with jury selection on September 19, 2022. At the conclusion of jury selection, Defendant filed a motion to quash the venire, or in the alternative, for a recess in the proceedings, asserting that the jury venire was so under-representative of the African-American population that it violated his

constitutional rights to a fair cross-section of jurors. The trial court denied the motion. On September 27, 2022, the trial concluded with the jury unanimously finding Defendant guilty of first degree murder; possession of buprenorphine; possession with intent to distribute cocaine; possession with intent to distribute alprazolam; possession with intent to distribute tramadol; obstruction of justice; and attempted aggravated assault.

On November 2, 2022, the trial court sentenced Defendant as follows – (1) Count One: life without the benefit of probation, parole, or suspension on the first degree murder of a peace officer conviction; (2) Count Three: five years on the possession of buprenorphine conviction; (3) Count Four: five years on the possession with intent to distribute cocaine conviction; (4) Count Five: five years on the possession with intent to distribute alprazolam conviction; (5) Count Six: five years on the possession with intent to distribute tramadol conviction; (6) Count Seven: thirty years on the obstruction of justice conviction; and (7) Count Eight: five years on the attempted aggravated assault on a peace officer with a firearm conviction. The trial court ordered the sentences to run concurrently, with credit for time served. On the same day, Defendant filed a motion for appeal that was granted by the trial court after the sentencing proceeding. As to Count Two, the State filed a *nolle prosequi* on November 3, 2022. This appeal followed.

**ERRORS PATENT**

Appellate courts review all criminal appeal records for the existence of a patent error. *See* La. C.Cr.P. art. 920(2).[1] A review of the record revealed one

---

[1] Louisiana Code of Criminal Procedure Article 920(2) provides that the scope of appellate review includes: "[A]n error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."

possible error patent, which is also raised as assignment of error number four in Defendant's original appellant brief. This error will be discussed *infra* in conjunction with assignment of error number four.

## DISCUSSION

In his original appellant brief, Defendant assigns four errors for this Court's review: (1) the evidence is insufficient to support Darren Bridges's conviction for first degree murder of a police officer (Count One) because the State failed to prove beyond a reasonable doubt that Mr. Bridges did not commit the homicide in self-defense; (2) the trial court erred in denying the defense's motion for mistrial after the prosecutor, in his rebuttal to closing argument, commented on Darren Bridges's failure to testify; (3) the trial court abused its discretion in denying the defense's motion for mistrial after the prosecutor elicited character evidence about the victim from his mother, and subsequently denying the defense's motion for mistrial after the prosecutor, in his rebuttal to closing argument, made repeated comments about the victim's good character and the defendant's purported bad character; and (4) the verdict of attempted aggravated assault with a firearm upon a police officer (Count Eight) is not an authorized responsive verdict such that the return of such a verdict constitutes patent error and operates as an acquittal on the charge.

Defendant has also filed two *pro se* supplemental briefs. In his original supplemental *pro se* brief, Defendant assigns one error for this Court to review: the grand jury indictment form was insufficient concerning first degree murder of Officer McNeil (Count One) because it does not list every essential element of the offense charged in the indictment. Additionally, in his second supplemental *pro se* brief, Defendant assigns two errors for this Court to review: (1) the evidence is insufficient to support Darren Bridges's conviction for first degree murder of a police

6

officer (Count 1) because the State failed to prove beyond a reasonable doubt that Mr. Bridges did not commit the homicide in self-defense; and (2) Mr. Darren Bridges's right to Due Process under the Sixth and Fourteenth Amendments to the United States Constitution was infringed upon because the jury in his case was not drawn from a fair cross-section of the community. As assignment of error number one in both the original and second supplemental *pro se* briefs are the same, we will address both assignments simultaneously under assignment of error number one.

### *Assignment of Error Number One*

In his assignment of error number one, Defendant contends that the evidence is insufficient to support his conviction for first degree murder of a peace officer as the State failed to prove beyond a reasonable doubt that he was not acting in self-defense. In the alternative, Defendant asserts the first degree murder conviction should be modified to the lesser included offense of manslaughter as Defendant killed Officer McNeil in sudden passion or heat of blood. We first determine whether sufficient evidence exists to support the conviction of first degree murder.[2]

Pursuant to *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), this Court must determine that the evidence, viewed in the light most favorable to the prosecution, "was sufficient to convince a rational trier of fact that all the elements of the crime had been proved beyond a reasonable doubt." *State v. Neal*, 2000-0674, p. 9 (La. 6/29/01), 796 So.2d 649, 657 (citations omitted). The statutory test of La. R.S. 15:4385 "works with the *Jackson* constitutional sufficiency

---

[2] "When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal . . . ." *State v. Groves*, 2020-0450, p. 21 (La. App. 4 Cir. 6/10/21), 323 So.3d 957, 971 (citing *State v. Hearold*, 603 So. 2d 731, 734 (La. 1992)).

test to evaluate whether all the evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury." *Id.* (citing *State v. Rosiere*, 488 So.2d 965, 968 (La. 1986)). This Court has set forth the applicable standard of review for sufficiency of the evidence:

> In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Green*, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. *State v. Mussall*, 523 So. 2d 1305 (La. 1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. *Mussall*; *Green*; *supra*. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." *State v. Smith*, 600 So. 2d 1319 (La. 1992) at 1324.

*State v. Berniard*, 2014-0341, p. 10 (La. App. 4 Cir. 3/4/15), 163 So.3d 71, 80 (citing *State v. Ragas*, 1998-0011, p. 13 (La. App. 4 Cir. 7/28/99), 744 So.2d 99, 106-07).

The State charged Defendant with the first degree murder of Officer McNeil, and the jury found him guilty as charged. La. R.S. 14:30 (A)(2) defines first degree murder of a police officer as the killing of a human being "when the offender has a specific intent to kill or to inflict great bodily harm upon a…peace officer… engaged in the performance of his lawful duties…." La. R.S. 14:10(1) defines specific criminal intent as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or his failure to act." "Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant." *State v. Bishop*, 2001-

8

2548, p. 4 (La. 1/14/03), 835 So.2d 434, 437 (citations omitted). Thus, in order to sustain a conviction for first degree murder of a peace officer, the State must prove that (1) the victim was a peace officer engaged in the performance of his lawful duties; and (2) the defendant intended to kill or inflict great bodily harm upon the victim. Defendant argues that there is insufficient evidence for his conviction of first degree murder of a peace officer because the State failed to prove beyond a reasonable doubt that the shooting was not the result of self-defense. Defendant argues that he acted in self-defense when he killed Officer McNeil; thus, his actions were legally justified.

A homicide is justifiable "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La. R.S. 14:20(A)(1). Therefore, there are two necessary components to invoke this justification: (1) the defendant's reasonable belief that he is in imminent danger of losing his life or receiving great bodily harm, and (2) that the killing of the other person is necessary to save himself from that danger. *State v. Miller*, 2014-0406, p. 19 (La. App. 4 Cir. 2/25/15), 160 So.3d 1069, 1082. "In a homicide case in which the defendant asserts he acted in self-defense, the State has the burden of establishing beyond a reasonable doubt that the defendant did not act in self-defense." *State v. Kirk*, 2011-1218, pp. 6-7 (La. App. 4 Cir. 8/8/12), 98 So.3d 934, 939-40 (citing *State v. Taylor*, 2003-1834, p. 7 (La. 5/25/04), 875 So.2d 58, 63).

Turning to the facts of this case, it is undisputed that Officer McNeil was killed while engaged in the performance of his lawful duties as a police officer – he was on a proactive patrol of Tara Lane and Cindy Place with his partner and two other officers. The officers observed a suspicious male in the area, began to

9

investigate, and Officer McNeil encountered Defendant during the performance of this investigation. Therefore, Officer McNeil was operating within the course and scope of his police officer duties when he was killed.

Regarding the "specific intent to kill or to inflict great bodily harm" element, the evidence presented at trial supports the conclusion that, at a minimum, Defendant intended to inflict great bodily harm upon Officer McNeil. Surveillance video footage of 6800 Cindy Place shows Officer McNeil and Defendant struggling on the ground. Defendant manages to obtain a dominant position, and as he is standing, Defendant fires his gun twice at Officer McNeil, who, at the time, was on his knees. Time passes. One second. Two seconds. As Officer McNeil's motionless body lies face-down on the ground, Defendant steps over him, takes a step away, turns back, and fires a third shot into Officer McNeil's head, before running off. Approximately two full seconds pass in the surveillance footage between the second and third gunshots. This fact provides sufficient evidence for the jury to determine Defendant's intent was to either kill or inflict great bodily harm upon Officer McNeil.

Defendant claims he shot Officer McNeil in self-defense and focuses on Officer McNeil's pursuit and use of his taser on Defendant. To support his self-defense claim, Defendant attempts to utilize his expert, Dr. W. Lloyd Grafton ("Dr. Grafton"), to opine on the behavioral effects of the deployment of a taser. While Dr. Grafton's testimony addresses the varying effects a deployed taser can have on an individual – from no pain to it being "the most pain they had ever felt" – his testimony does not provide a justification for shooting someone in response to being tased moments earlier. Dr. Grafton testified that the deployment of a taser is an intermediate use of force equivalent to "a canine, a dog, a baton, chemical sprays."

Further, Sergeant David Barnes ("Sergeant Barnes") testified that under the policies and procedures in place at the time of this incident, Officer McNeil's use of his taser in this situation would have triggered a use of force investigation, "but it wouldn't have been what we [the NOPD] considered a serious use of force." Assuming Defendant has a reasonable belief that he was in imminent danger of losing his life or receiving great bodily harm due to Officer McNeil's pursuit and use of his taser on him, shooting Officer McNeil three times – while he was in non-dominant positions – and killing him was not necessary to save Defendant from any self-perceived danger of the taser. Based on the evidence presented at trial, we find that the State presented sufficient evidence to show Defendant was not acting in self-defense.

Alternatively, Defendant asserts that his first degree murder conviction should be modified to the lesser included offense of manslaughter as his encounter with Officer McNeil began suddenly and ended so quickly that he had no time to regain his self-control. We disagree. According to La. R.S. 14:31(A)(1), manslaughter is defined as:

> A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]

The surveillance footage debunks any manslaughter argument. Defendant shot Officer McNeil twice while he was on his knees. Two seconds pass, and Defendant delivers a final shot into Officer McNeil's head as he is laying on the ground. This

11

third shot clearly demonstrates Defendant's specific intent to kill or cause great bodily harm to Officer McNeil.

The surveillance footage speaks for itself. Defendant maintains that he acted in self-defense when he shot Officer McNeil or, in the alternative, killed Officer McNeil in sudden passion or heat of blood. However, when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable double that Defendant was not acting in self-defense, nor was he provoked, when he killed Officer McNeil. Officer McNeil and his fellow officers were proactively patrolling the area when Defendant was first spotted. When Officer McNeil encountered Defendant, Defendant took off running in the opposite direction. As this chase ensued, Officer McNeil utilized his taser – an intermediate, non-lethal use of force – on Defendant in order to subdue him. Defendant pulled out a gun and shot Officer McNeil three times, ultimately leading to his death. Officer McNeil's use of non-lethal force in order detain Defendant did not warrant Defendant's use of deadly force to protect himself.

After a review of the evidence before this Court, we find that the jury made reasonable credibility determinations in favor of the State and rationally rejected Defendant's assertion of self-defense. The record reveals sufficient evidence to conclude that any rational trier of fact could have found that the State proved beyond a reasonable doubt all the elements of first degree murder of a peace officer. Accordingly, we conclude that this assignment of error, regarding the first degree murder of a peace officer conviction, is without merit.

### Assignment of Error Number Two

In his assignment of error number two in his original brief, Defendant maintains that the trial court erred in denying his motion for mistrial after the

prosecutor commented on his failure to testify. "The law is well-settled that '[m]istrial is a drastic remedy that is only authorized where substantial prejudice will otherwise result to the defendant'[sic], and '[t]he determination of whether prejudice has resulted lies within the sound discretion of the trial court.'" *State v. Trung Le*, 2017-0164, p. 37-38 (La. App. 4 Cir. 4/11/18), 243 So.3d 637, 668 (citing *State v. Monroe*, 2015-1151, pp. 13-14 (La. App. 4 Cir. 8/10/16), 198 So.3d 259, 267). A mistrial shall be ordered upon motion of the defendant if the State directly or indirectly refers to the defendant's failure to testify in his own defense. La. C.Cr.P. art. 770(3).

In his rebuttal to closing argument, the prosecutor stated:

What evidence from the witness stand over the past two weeks? What evidence on that table have you seen or heard that supports that the murder of Marcus McNeil was justified, excusable? What evidence have you heard from this witness stand or seen in this courtroom that supports the fact that what you did in New Orleans east to that man, to her son, is excusable? Not a single piece of evidence. Not a single witness has taken the stand to support the ludicrous accusation that what he did was okay.

Defendant moved for a mistrial based upon the prosecutor's comments, which was denied. This Court must determine whether the prosecutor's comments made in rebuttal to closing argument directly or indirectly refers to the Defendant's failure to testify at trial.

In *State v. Trung Le*, this Court recognized:

Comment on the defendant's failure to take the stand at trial is a trial error, not a structural defect in the proceedings, that has been subject to harmless-error analysis at the federal level since *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Moreover, we have clarified that as a matter of Louisiana law, the mandatory mistrial provisions of La.C.Cr.P. art. 770, which encompass a prosecutor's direct or indirect comment on the defendant's failure to testify, are directives to the trial judge and do not preclude an appellate court from conducting harmless-error analysis. *State v. Johnson,* 1994-1379 (La. 11/27/95), 664 So.2d 94.

In *State v. Wormser,* 467 So. 2d 58, 60 (La.App. 4 Cir.1985), the defendant argued that the trial court improperly allowed the prosecutor to comment on his failure to testify. *Wormser* noted that:

Perhaps the prosecution's statement, during closing argument, that "nobody ever came and took the stand ..." may be construed as a disguised reference to the defendant's failure to testify on his own behalf. But even so, art. 770 applies; and, such a statement constitutes reversible error if the statement was intended to draw the attention of the jury to the defendant's failure to testify. *State v. Smith*, 433 So.2d 688, 697 (La.1983). When the defendant is the only person who can dispute the testimony, a reference to the testimony or uncontroverted focuses the jury's attention of the defendant's failure to testify. *State v. Latin*, 412 So.2d 1357, at 1362 (La.1982). However, in the instant case, there were numerous witnesses who could have testified for the defendant; therefore, the prosecutor's remarks did not focus the jury's attention on the defendant's failure to testify. Furthermore, it cannot be inferred that the prosecutor intended to emphasize defendant's failure to take the stand. *State v. Smith*, 327 So.2d 355 (La.1976).

2017-0164, p. 41, 243 So.3d at 669-70.

Additionally, in *State v. Harry,* defendant asserted that the prosecutor's statement – "you've heard absolutely nothing to refute any of these events" – was intended to refer to her failure to testify, and the trial court erred in not granting the motion for mistrial based on Article 770(3). 2001- 2336, p. 11 (La. App. 4 Cir. 6/26/02), 823 So.2d 987, 996. On appeal, this Court stated:

Addressing this issue, the Louisiana Supreme Court in *State v. Mitchell*, 2000-1399, p. 5 (La.2/21/01), 779 So.2d 698, 702, listed "'[s]tatements in argument to the effect that there is no refuting evidence'" as illustrative of a permissible indirect reference not intended to focus on a defendant's failure to testify. The Supreme Court also stated that such a statement is "permissible, though not favored." 2000-1399 at p. 5, 779 So.2d at 701. Although the prosecutor in this case, as Ms. Lee emphasizes, used the modifier "absolutely," we find the statement at issue falls squarely within the category of arguing that there is "no refuting evidence," classified in *Mitchell* as permissive. We thus reject this argument."

*Harry*, 2001-2336, pp. 11-12, 823 So.2d at 996.

14

Here, the prosecutor remarked that no evidence had been presented to show Defendant's actions were justifiable. Although the prosecutor's remarks bordered on the lines of impermissibility, we find the rebuttal remarks were permissible. Within the context of closing argument, the rebuttal remarks constituted comment on the evidence – comparing the evidence presented by both sides and highlighting the State's position that Defendant's murder of Officer McNeil was not justified – rather than an impermissible reference to the Defendant's failure to testify. Even assuming the rebuttal remarks improperly referenced Defendant's failure to testify, based on the evidence presented at trial, it appears that the prosecutor's remarks did not contribute to the guilty verdict. Considering the strength of the State's case, which included surveillance video, any perceived error is harmless. Therefore, this assignment of error is without merit.

***Assignment of Error Number Three***

In his assignment of error number three in his original brief, Defendant argues the trial court abused its discretion in denying his motion for mistrial after the prosecutor violated the trial court's limiting instruction prohibiting a victim impact statement and improperly elicited character evidence about Officer McNeil from his mother, Dr. Kimberly McNeil. Victim impact testimony is "evidence of the character of the victim, evidence of the emotional, physical, and economic impact of the crime on the family of the murdered victim, and evidence of the survivors' opinions of the crime and of the murderer." *State v. Hoffman*, 1998-3118, p. 25 (La. 4/11/00), 768 So.2d 542, 567 (citing *State v. Bernard*, 608 So.2d 966, 967-68 (La.1992)). On direct examination, Dr. McNeil testified that she was a pediatrician and Officer McNeil's mother. She further testified that Officer McNeil was accepted into the police academy in August 2014, and that he wanted to become a police officer in order to

help the community. An examination of her testimony clearly reveals that her statements at trial were not victim impact testimony and did not violate the trial court's limiting instruction.

Further, Defendant argues that the trial court erred when it subsequently denied Defendant's motion for mistrial after the prosecutor, in his rebuttal to closing argument, made repeated comments about Officer McNeil's good character and Defendant's purported bad character. Louisiana Code of Criminal Procedure Article 775, states, in part, "Upon motion of a defendant, a mistrial shall be ordered and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial." "The standard of review is whether the prosecutor's comments in closing argument rendered the trial fundamentally unfair and the resulting conviction a denial of due process." *State v. Williams*, 575 So.2d 452, 455 (La. App. 4th Cir. 1/31/91). In *State v. Casey*, the Louisiana Supreme Court stated:

> Louisiana jurisprudence on prosecutorial misconduct allows prosecutors wide latitude in choosing closing argument tactics. *See State v. Martin*, 539 So.2d 1235, 1240 (La.1989) (holding closing arguments that referred to "smoke screen" tactics and defense as "commie pinkos" inarticulate but not improper); *State v. Copeland*, 530 So.2d 526, 545 (La.1988) (holding prosecutor's waving gruesome photo at jury and urging members to look at it if they became "weak kneed" during deliberations as not improper). Further, the trial judge has broad discretion in controlling the scope of closing arguments. *State v. Prestridge,* 399 So.2d 564, 580 (La.1981). And, even if the prosecutor exceeds these bounds, the court will not reverse a conviction unless "thoroughly convinced" that the argument influenced the jury and contributed to the verdict. *See State v. Martin,* 93–0285, p. 17 (La.10/17/94), 645 So.2d 190, 200; *State v. Jarman,* 445 So.2d 1184, 1188 (La.1984); *State v. Dupre,* 408 So.2d 1229, 1234 (La.1982).
>
> Even if we were to assume that the prosecutor's comments in this case were outside the proper scope of closing arguments, the defendant is still not entitled to relief. The court must be thoroughly convinced that the argument influenced the jury and contributed to the verdict before

16

reversing a conviction based on misconduct during the closing arguments.

1999-0023, p. 17 (La. 1/26/00), 775 So.2d 1022, 1036.

An examination of the trial records demonstrates that Defendant's counsel attempted to portray Officer McNeil as the first aggressor. During the cross-examination of Sergeant David Barnes, defense counsel introduced Officer McNeil's body camera footage and stills from this footage, which depicted Officer McNeil grabbing the back of Defendant's neck and showed two taser lights in his back. Further cross-examination of Sergeant Barnes attempted to elicit testimony that Officer McNeil was the first aggressor in the situation and he used excessive force in utilizing his taser. Moreover, during closing arguments, defense counsel attempted to tarnish Officer McNeil's character and depict him as the first aggressor by stating:

> He [Officer McNeil] runs at him [Defendant]; he [Officer McNeil] grabs him [Defendant]; it's the wrong guy. He [Officer McNeil] grabs him [Defendant] by the neck to force him [Defendant] down to arrest him [Defendant] with no information. . . . So then what happens next? As he [Defendant] runs, light him [Defendant] up with a taser and put him [Defendant] to the ground. And, again, he's [Defendant's] not fighting, he's [Defendant's] being held down. And he [Defendant] gets 50,000 volts and then another 50,000 volts of extreme pain that he [Defendant] doesn't know what it is. He [Defendant] doesn't know what it can do to him [Defendant]. But you heard the witnesses testify that it's potentially lethal force.

As defense counsel attempted to depict Officer McNeil as the first aggressor, the State was permitted to rebut such evidence with its own character evidence.[3] Given the wide latitude provided to prosecutors in closing arguments, and again, the

---

[3] "Evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor" is admissible at trial. La. C.E. art. 404(A)(3).

strength of the State's case, we find the State's closing and rebuttal remarks in this case did not improperly influence the jury or contribute to the verdict. Thus, we find this assignment of error is without merit.

***Assignment of Error Number Four***

In his assignment of error number four in his original brief, Defendant argues that the verdict of attempted aggravated assault with a firearm upon a police officer is not an authorized responsive verdict; thus, the return of such a verdict constitutes patent error and operates as an acquittal on the charge. This Court, in *State v. Baugh*, stated:

> Returning a verdict of a lesser crime is well within the jury's authority if that lesser crime is deemed a responsive verdict. However, recent Supreme Court jurisprudence suggests that the jury's return of an unauthorized responsive verdict, even in the absence of an objection, constitutes an error patent, which is tantamount to an acquittal. *State v. Price*, 2017-0520 (La. 6/27/18), 250 So.3d 230 (finding that the verdicts of guilty of simple kidnapping, which were not responsive to charges of second-degree kidnapping, constituted implicit acquittal on charges for second-degree kidnapping, thus warranting reversal of convictions and post-verdict judgment of acquittal on charges); *State v. Campbell,* 95-1409, p. 3 (La. 3/22/96), 670 So.2d 1212, 1213 ("Relators acquiesced in the list of responsive verdicts given jurors by the trial judge but the return of the unresponsive verdicts of attempted jury tampering constitutes an error patent on the face of the record and requires reversal of relators' convictions."); *State v. Mayeux*, 498 So.2d 701, 702 (La. 1986) ("non-responsive verdict [is] error patent on the face of the record and therefore reviewable on appeal despite the absence of an objection during trial."); *State v. Jones*, 2013-1118, p. 6 (La. App. 4 Cir. 1/30/14), 156 So.3d 126, 129 ("a non-responsive verdict is a patent error which does not require a contemporaneous objection," citing La. C.Cr.P. art. 920(2) ).

2018-0506, p. 2 (La. App. 4 Cir. 12/19/18), 262 So.3d 312, 313. In *Baugh*, the defendant was charged with one count of battery of a police officer with injury that required medical attention, and the jury returned with the responsive verdict of simple assault. *Id.*, at p. 1, 262 So.3d at 312-13. Defendant filed motions for post-verdict judgment of acquittal and new trial, and the trial court granted the defendant's

motion for post-verdict judgment of acquittal and vacated the verdict, finding that the evidence presented at trial was insufficient to support the verdict of simple assault. *Id.*, at p. 1, 262 So.3d at 313. This Court affirmed the trial court's judgment, reasoning that both methods of committing an assault – the lessor offense – include the element of specific intent, which the charged offense – battery – does not include; thus, assault was not a valid responsive verdict. *Id.*, at p. 3, 262 So.3d at 314.

Louisiana Revised Statute 14:37.2(A) defines aggravated assault upon a peace officer as "an assault committed upon a peace officer who is acting in the course and scope of his duties." "Assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. R.S. 14:36. And, "[b]attery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another." La. R.S. 14:33. While this Court has not directly addressed attempted aggravated assault, in *State v. Barnett*, the Fifth Circuit found that attempted aggravated assault was a proper responsive verdict to aggravated assault. 2012-0816 (La. App. 5 Cir. 5/16/13), 118 So.3d 1156. The Fifth Circuit reasoned:

> Although La. C.Cr.P. art. 814 does not list responsive verdicts for La. R.S. 14:37.4, La.C.Cr.P. art. 815 provides that "[i]n all cases not provided for in Article 814, the following verdicts are responsive: (1) Guilty; (2) Guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense a misdemeanor; or (3) Not Guilty." The Louisiana Supreme Court has held that La. R.S. 14:27(C) makes an attempt a lesser included offense of the charged crime. *State v. Ford,* 407 So.2d 688, 691 (La.1981).

*Id.*, at p. 12, 118 So.3d at 1163-64. In so finding, the Fifth Circuit recognized that assault has more than one definition, and the record reflected that defendant's charge of aggravated assault with a firearm was based on the latter definition of assault – the intentional placing of another in reasonable apprehension of receiving a battery.

*Id.*, at p. 12, 118 So.3d at 1164. Ultimately, the Fifth Circuit determined "[T]he record supports a finding that the state's theory of culpability rests on the alternative definition of assault and thus, . . . the responsive verdict of attempted aggravated assault with a firearm is appropriate in this case." *Id.*, 2012-0816, p. 12-13, 118 So.3d at 1164. Notably, in *State v. Brown*, this Court applied the *Barnett* case, recognizing "the definition of a lesser included offense…does not account for those exceedingly few offenses—such as cruelty to juveniles and assault—that by statutory definition may be committed in more than one manner." 2013-0268, p. 13 (La. App. 4 Cir. 7/24/13), 163 So.3d 1, 8.

In the matter herein, we find that attempted aggravated assault with a firearm upon a police officer is a responsive verdict to aggravated assault with a firearm upon a peace officer. The record indicates that Defendant's charge of aggravated assault with a firearm was based on the following definition of assault – the intentional placing of another in reasonable apprehension of receiving a battery. At trial, the trial court instructed the jury that "in order to convict the defendant you [it] must find that the defendant intentionally placed Stephen Stefano in reasonable apprehension of receiving a battery with a firearm; and two, that Stephen Stefano was a peace officer acting in the course of scope of his duties." For that reason, the responsive verdict of attempted aggravated assault with a firearm is appropriate in this case. This assignment of error is without merit.

### Original Supplemental Pro Se Brief – Assignment of Error Number One

In his assignment of error number one in his original supplemental *pro se* brief, Defendant asserts that the grand jury indictment form was insufficient concerning the first degree murder of Officer McNeil (Count One) because it does

not list every essential element of the offense charged in the indictment. Louisiana Code of Criminal Procedure Article 464 provides:

> The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

Further, La. C.Cr.P. art. 465[4] "authorizes the use of specific short form indictments in charging certain offenses, including first degree murder," and "[t]he constitutionality of short forms has been consistently upheld by this Court." *State v. Draughn*, 2005-1825, p. 61 (La. 1/17/07), 950 So.2d 583, 624. When short form indictments are used, a defendant may obtain the "details as to the statutory method by which he committed the offense through a bill of particulars." *Id.* In *State v. Draughn*, the Louisiana Supreme Court determined that the defendant was charged in compliance with the law, which provides for the use of a short form indictment for first degree murder. *Id.* at p. 62, 950 So.2d at 624.

Here, the grand jury indictment form concerning the first degree murder of Officer McNeil (Count One) states:

> THE GRAND JURORS of the State of Louisiana, duly impaneled and sworn in and for the body of the Parish of Orleans, in the name and by the authority of the said State, upon their oath, PRESENT, that one DARREN D. BRIDGES late of the Parish of Orleans, on the 13th day of OCTOBER in the year of our Lord, two thousand AND SEVENTEEN in the Parish of Orleans aforesaid, and within the jurisdiction of the Criminal District Court of the Parish of Orleans, COMMITTED FIRST DEGREE MURDER OF POLICE OFFICER MARCUS MCNEIL.

---

[4] Louisiana Code of Criminal Procedure Article 465(A)(31) provides that the proper short form indictment for first degree murder is "A.B. committed first degree murder of C.D."

21

Defendant filed a motion to quash short form indictment, and later filed a bill of particulars. In response to Defendant's bill of particulars, the State answered that Defendant violated La. R.S. 14:30(A)(2). Ultimately, the trial court denied Defendant's motion to quash. The record before this Court shows that Defendant was provided fair notice of the first degree murder offense for which he was charged in accordance with the law. Therefore, we find this assignment of error is meritless.

***Second Supplemental Pro Se Brief – Assignment of Error Number Two***

In his assignment of error number two in his second supplemental *pro se* brief, Defendant argues that his right to Due Process under the Sixth and Fourteenth Amendments to the United States Constitution was infringed because the jury in his case was not drawn from a fair cross-section of the community. Specifically, Defendant argues that the jury venire was "so unrepresentative" of the Orleans Parish African-American registered voter population that it violated his state and federal constitutional rights to a fair cross-section and to equal protection.

"[T]he selection of a petit jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to a jury trial." *State v. Holliday*, 2017-01921, p. 51 (La. 1/29/20), 340 So.3d 648, 691 (citing *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975)). Louisiana Code of Criminal Procedure Article 419(A) states:

> A general venire, grand jury venire, or petit jury venire shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race.

Adopting the language of the United States Supreme Court, our Supreme Court articulated the elements of a violation of the fair cross-section requirement:

> [I]n order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show: 1) that the group alleged to be excluded is a 'distinctive' group in the community; 2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and 3) that the under-representation is due to systematic exclusion of the group in the jury selection process.

*Holliday*, 2017-01921, p. 51, 340 So.3d at 692 (citing *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979)). Typically, courts assess the degree of under-representation utilizing "the 'absolute disparity' measure (the difference in the percentage of the group in the jury pool and the percentage of the group in the jury-eligible population), the 'comparative disparity' measure (the ratio of the absolute disparity to the distinctive group's representation in the jury-eligible population), or a standard deviation analysis." *Id.* at p. 51, 340 So.3d at 692. There is no jurisprudentially-specific qualifying degree of under-representation, and the defendant must show how the jury selection process works to systematically exclude the distinct group. *Id.* at p. 51, 340 So.3d at 692 (citing *Berghuis v. Smith*, 559 U.S. 314, 329, 130 S.Ct. 1382, 1393, 176 L.Ed.2d 249 (2010)). Moreover, a defendant "cannot 'make out a prima facie case merely by pointing to a host of factors that, individually or in combination, *might* contribute to a group's underrepresentation.'" *Id.* (citing *Berghuis*, 559 U.S. at 332, 130 S.Ct. at 1395).

In his supplemental brief, Defendant suggests:

> According to the Louisiana Secretary of State, there are 267,004 registered voters in Orleans Parish as of September 1, 2022, of which approximately 54.5% are African-American, and 36.5% are white. Vol. 1, pp. 81, 86. The venire of 66 assembled for this case contained only 39.5% African-American (26-66), while 55.9% were white (37-66). Compared to the number of African-American registered voters, this is an absolute disparity of 19%, and a comparative disparity of 27%.

Despite Defendant's use of venire and voter statistics, he does not demonstrate how the jury selection process in Orleans Parish works to systematically exclude African-Americans. Defendant's failure in addressing this issue is fatal to his argument. As such, we find Defendant failed to show the "systematic exclusion" of a distinct group. Thus, there is no reversible error, and this assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the Defendant's convictions for first degree murder of a peace officer; possession of buprenorphine; possession with intent to distribute cocaine, alprazolam, and tramadol; obstruction of justice; and attempted aggravated assault on a peace officer with a firearm.

**AFFIRMED**