DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

In the Interest of M.G, a child
_____

K.M.G. and GUARDIAN AD LITEM PROGRAM,

Petitioners,

v.

HEART OF ADOPTIONS, INC., and DEPARTMENT OF
CHILDREN AND FAMILIES,

Respondents.

No. 2D2023-2771

_____

December 4, 2024

Petitions for Writ of Certiorari to the Circuit Court for Pinellas County;
Patrice Moore, Judge.

Ita M. Neymotin, Regional Counsel, Second District, and Ngozi C.
Acholonu, Assistant Regional Counsel, Office of Criminal Conflict and
Civil Regional Counsel, Clearwater, for Petitioner K.M.G.

Sara Elizabeth Goldfarb, Statewide Director of Appeals, and Amanda
Victoria Glass of Statewide Guardian ad Litem Office, Tallahassee, for
Petitioner Guardian ad Litem Program.

Robert L. Webster, III, of Tate Healey Webster, Tampa, for Respondent
Heart of Adoptions, Inc.

NORTHCUTT, Judge.

K.M.G. and the Guardian ad Litem have each petitioned for a writ of certiorari to quash an order that stays dependency proceedings regarding K.M.G.'s minor child and transfers the child's placement to Heart of Adoptions, Inc. Both petitioners complain that the dependency court entered the order without taking evidence on the best interests of the child. The Department of Children and Families properly concedes error on this point. We agree with the petitioners and the Department, grant the petitions, and quash the order under review.

The ruling was made in a dependency proceeding under chapter 39, Florida Statutes (2022), involving K.M.G. and her child, M.G. Previously in the case, the dependency court had entered an order terminating K.M.G.'s parental rights, and she had appealed. While the appeal was pending, the child's biological father executed a consent to adoption, surrendering his rights to and custody of M.G. to Heart of Adoptions, a licensed adoption entity under Florida law.

Pursuant to a provision in the adoption statutes, section 63.082(6), Florida Statutes (2022), Heart of Adoptions moved to intervene in the ongoing dependency case, naming the child's foster parents as the prospective adoptive parents. The motion sought a transfer of M.G.'s placement to Heart of Adoptions, which in turn would supervise his placement with the prospective adoptive parents. Because K.M.G.'s parental rights had been terminated, she was not notified of the hearing on the motion and she did not appear. The dependency court permitted Heart of Adoptions to intervene as a party in the dependency case, but it did not alter M.G.'s placement or stay the proceedings at that time.

This court ultimately reversed the termination of K.M.G.'s parental rights. *See K.M.G. v. Dep't of Child. & Fams.*, 363 So. 3d 1142 (Fla. 2d

2

DCA 2023).  Consistent with her reinstated parental rights, the Department gave her a case plan with a goal of reunification.

As the dependency case proceeded, the dependency court held two additional hearings on Heart of Adoptions' request to transfer M.G.'s placement.  Over K.M.G.'s protestations that the matter required an evidentiary hearing, the court declined to receive testimony or other evidence on the question of whether the proposed transfer was in M.G.'s best interests, and Heart of Adoptions presented none.  K.M.G. attempted to testify, but the court only permitted her to proffer testimony for the purposes of making an appellate record.

Thereafter, the dependency court issued the order under review here.  It transferred M.G.'s placement to Heart of Adoptions and stayed the dependency case pending the outcome of private adoption proceedings under chapter 63.  The order also designated M.G.'s foster parents as prospective adoptive parents.  These certiorari proceedings ensued.

When Heart of Adoptions filed its motion to intervene, section 63.082(6)(c) required the dependency court to "grant a hearing to determine . . . whether a change of placement of the child is in the best interests of the child."  § 63.082(6)(c), Fla. Stat. (2022).  By the time the court conducted the hearings giving rise to the order under review, the statute had been amended to specify that the court must hold an "evidentiary hearing" to determine whether the change of placement is in the best interests of the child.  § 63.082(6)(d), Fla. Stat. (2023).  Both versions provide that when making this best interests determination, the court is to "consider and weigh all relevant factors," including but not limited to a specific list of factors set forth in the statute.  § 63.082(e), Fla. Stat. (2022); § 63.082(f), Fla. Stat. (2023).

3

In its order, the dependency court ventured that it was not required to consider the list of statutory best interests factors because the child was to continue living with his foster parents and thus "there is no transfer of custody or placement." Nevertheless, the court stated that it "heard argument, took testimony, and considered the factors" in reaching its decision.

The dependency court was mistaken in its belief that it was not obligated to consider statutory factors bearing on M.G.'s best interests because he was to remain in his foster parents' care. On its face, section 63.082 requires the court to consider and weigh the listed factors and all other relevant circumstances in *every* case.

The court's confusion on this point stemmed from its misapprehension that a proposed change of placement to which the best interests factors apply refers only to a physical relocation of the child. But section 63.032(14) defines "placement" not as a *physical* entrustment, but as "the process of a parent or legal guardian *surrendering a child for adoption* and *the prospective adoptive parents receiving and adopting the child* and *all actions by any adoption entity participating in placing the child.*" (Emphases added.)

As such, the "placement" of a child with an adoption entity pursuant to section 63.082 involves a change in the child's legal custody. *Legal custody* is defined as "the right to have physical custody of the child and the right and duty to protect, nurture, guide, and discipline the child and to provide him or her with food, shelter, education, and ordinary medical, dental, psychiatric, and psychological care." § 39.01(39); *see* § 63.032(11) (incorporating by reference the definition of *legal custody* from section 39.01). Indeed, the motion to intervene asked the court to modify M.G.'s "legal placement" to Heart of Adoptions as the

4

"adoption entity." Thus, the dependency court's belief that M.G.'s continued physical residence with his foster parents excused it from making the best interests determination mandated by section 63.082 was simply incorrect.

Further, the record flatly contradicts the dependency court's assertion that it "took testimony" on the factors anyway. As mentioned, the court rejected K.M.G.'s argument that it must conduct an evidentiary hearing on the proposed change of placement. The court took no evidence on the statutory best interests factors, and Heart of Adoptions, the proponent of the change, offered none.

Heart of Adoptions maintains that no evidence was required because it proceeded under the 2022 version of section 63.082, in effect when it filed its motion to intervene. At that time, the statute simply required the court to "grant a hearing" to determine whether the proposed change of placement was in the child's best interests, whereas the 2023 version enacted thereafter specifies that the hearing must be evidentiary. However, 63.082 is a procedural question. For that reason, the 2023 amendment of its mandated procedure applied in pending cases and governed hearings conducted on or after the amendment's effective date. *See Love v. State*, 286 So. 3d 177, 190 (Fla. 2019).

Regardless, there can be no question that the 2022 statutory provision, which requires the court to make a determination of fact that the proposed change of placement would be in the dependent child's best interests, necessarily requires the taking of evidence on that issue. *See A.R. v. Dep't of Child. & Fams.*, 336 So. 3d 830, 835 (Fla. 2d DCA 2022) (holding that evidentiary hearing was required to determine whether sibling's visitation with dependent child following termination of parent's parental rights was in child's best interests); *Sparks v. Sparks*, 75 So. 3d

5

861, 862 (Fla. 1st DCA 2011) (statute directing court in dissolution of marriage proceeding to "determine" matters related to parenting "in accordance with the best interests of the child" required evidentiary hearing). Thus, the dependency court's refusal to take evidence before ordering a change in M.G.'s placement departed from the requirements of both versions of section 63.082.

To obtain certiorari relief, a petitioner must demonstrate that there has been a departure from the essential requirements of law that causes a material injury for the remainder of the case, for which there is no adequate legal remedy. *Presidio Networked Sols., Inc. v. Taylor*, 115 So. 3d 434, 435 (Fla. 2d DCA 2013). A ruling departs from the essential requirements of law if it violates a "clearly established principle of law," which can derive from a variety of sources, including statutes. *Allstate v. Kaklamanos,* 843 So. 2d 885, 890 (Fla. 2003); *Combs v. State,* 436 So. 2d 93, 96 (Fla. 1983); *see also A.G. v. Fla. Dep't. of Child. & Fams.*, 65 So. 3d 1180, 1182 (Fla. 1st DCA 2011) (enforcing by certiorari the right to counsel set forth in dependency statutes and court rule).

"Courts lack the authority to deviate from statutory requirements when determining the placement of a child." *B.P. v. Dep't of Child. & Fams.*, 367 So. 3d 595, 598-99 (Fla. 2d DCA 2023) (quoting *L.J.S. v. Dep't of Child. & Fams.*, 995 So. 2d 1151, 1153 (Fla. 1st DCA 2008); *see also A.H. v. Dep't of Child. & Fams.*, 277 So. 3d 704, 707 (Fla. 3d DCA 2019) (court departed from essential requirements of law in ordering change of placement even though Department failed to comply with "statutory requisites"); *Guardian ad Litem Program v. R.A.*, 995 So. 2d 1083, 1084 (Fla. 5th DCA 2008) (failure to follow "statutory directives" is departure from essential requirements of law).

6

Here, the Department concedes that the dependency court departed from the essential requirements of law by halting the dependency proceeding and transferring M.G.'s placement to an adoption entity without taking evidence on the child's best interests as required by statute. This error is materially injurious to K.M.G. and her child because they have been deprived of the ability to seek reunification with the assistance of the Department. Indeed, as the dependency court responded when K.M.G.'s attorney objected to the change of placement on that basis, "she can do everything and she's still not going to be reunified because . . . I've granted [Heart of Adoptions'] motion to intervene." That deprivation is ongoing; it cannot later be rectified in an appeal from a final order in either the chapter 39 dependency case or in the anticipated chapter 63 adoption proceeding.

Accordingly, we grant the petitions for certiorari and quash the order under review.

Petitions granted; order quashed.

SLEET, C.J., and MORRIS, J., Concur.

_____

Opinion subject to revision prior to official publication.